**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**STATE OF NEW MEXICO ex rel. BUCKY**
**STONE; STATE OF NEW MEXICO ex**
**rel. DUSTY STONE; BUCKY STONE,**
**individually and DUSTY STONE,**
**individually and d/b/a STONE RANCH,**

      **Plaintiffs,**

**v.**                                                  **Civ: 22-805 KRS-JHR**

**THE BOARD OF COUNTY COMMISSIONERS**
**FOR THE COUNTY OF QUAY; LARRY**
**MOORE, in his official capacity as Quay**
**County road superintendent;**
**EVELYN WALLIN; and LARRY WALLIN,**

      **Defendants.**

**COUNTY DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' VERIFIED**
**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF,**
**JUST COMPENSATION AND DAMAGES**

      **COME NOW,** Defendants the Board of County Commissioners for the County of Quay

and Larry Moore (hereafter "County Defendants"), in his official capacity as Quay County Road

Superintendent, by and through their attorney, the Law Office of Jonlyn M. Martinez, LLC, and

hereby answer the Plaintiffs' Verified Complaint For Declaratory Relief, Injunctive Relief, Just

Compensation And Damages ( hereafter "Plaintiffs' Complaint") as follows:

**BACKGROUND**

      Plaintiff Dusty Stone submitted an Affidavit in *Zamora, et al. v. Board of County*

*Commissioners of Quay County, et al.* D-1010-CV-00068. ***See Affidavit***, attached hereto as

Exhibit A. In this Affidavit, Mr. Stone states the following:

1

The information below proves that starting in year 2010 (prior to the 2013 accident at issue) through at least to Nov. of year 2015 Quay County claims to the Court numerous times that Dusty Stone was creating the danger of loose livestock upon the public highways including NM 469, which is alleged to have caused the Nov. 3, 2013 accident at issue in the two Wrongful Death suits listed above. Quay County also testified to one of the paths that Dusty Stone's livestock could easily travel from Stone Ranch property, reaching NM 469. NM 469 is the scene of the accident at issue. Quay County's own claims to the court and sworn testimony shows that the livestock which caused the fatal accident more than likely came from Stone Ranch property.

**WHEREFORE,** the preponderance of evidence show that the Cow that was involved in causing the fatal accident at issue was more than likely Dusty's cow and therefore Dusty Stone should be joined as a Defendant in the cases in the light most favorable to achieve justice. These facts are being submitted to insure that if there is a review in the future due to additional accidents or deaths involving loose livestock on these public highways there is a full and complete record in regards to the issues.

Respectfully Submitted

Dusty Stone
2075 Quay Rd. 69
San Jon, NM 88434
575-403-6970

*See Affidavit of Dusty Stone*, at pp.'s 1 and 6, attached hereto as Exhibit A. Thus, Plaintiff Dusty Stone admitted that his livestock is able to leave his property and travel onto public highways.

2

This admission establishes the necessity of the cattleguards in the roadways in the vicinity of the Plaintiffs' property. Consequently, the allegations contained in the Plaintiffs' Complaint appear to contradict the allegations contained in Dusty Stone's Affidavit.

## Answer To Parties

1. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraph 1 of the Plaintiffs' Complaint.

2. The County Defendants deny the allegations contained in paragraph 2 of the Plaintiffs' Complaint.

3. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraphs 3 and 4 of the Plaintiffs' Complaint,  and therefore deny same.

 4. The County Defendants deny the allegations contained in paragraph 5 of the Plaintiffs' Complaint.

5. The allegations contained in paragraph 6 of the Plaintiffs' Complaint call for legal conclusions to which no response is required. To the extent a response is deemed necessary, the County Defendants deny same.

6. County Defendants admit the allegations contained in paragraph 7 of the Plaintiffs' Complaint.

7. County Defendants deny the allegations contained in paragraph 8 of the Plaintiffs' Complaint.

8. The allegations contained in paragraph 9 of the Plaintiffs' Complaint call for legal conclusions to which no response is required. To the extent a response is deemed necessary, the County Defendants deny same.

9. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraphs 10 and 11 of the Plaintiffs' Complaint, and therefore deny same.

### Answer To Jurisdiction and Venue

10. With respect to the allegation contained in paragraphs 12 and 13 of the Plaintiffs' Complaint, the Defendants admit that this Court has jurisdiction and venue over this matter and the parties as a result of the Plaintiffs' federal claims. The Defendants deny that the Plaintiffs have any meritorious claims under any theory of liability in this matter.

### Answer To Statement of Facts

11. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraphs 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 36 of the Plaintiffs' Complaint, and therefore deny same.

12. With respect to the allegation contained in paragraph 37 of the Plaintiffs' Complaint, the County Defendants admit that because the Plaintiffs' property is located within the County, County roads abut the Plaintiffs' property. The County Defendants deny the remaining allegations contained in paragraph 37 of the Plaintiffs' Complaint.

13. The allegations contained in paragraph 38 of the Plaintiffs' Complaint call for legal conclusions to which no response is required. To the extent a response is deemed necessary, the County Defendants deny same.

14. The County Defendants deny the allegations contained in paragraphs 39 and 40 of the Plaintiffs' Complaint.

<u>Answer to Surprise Installation of New Cattleguards to Create a Total Cattleguard Blockade</u>
<u>Around Plaintiff's Property</u>

15. With respect to the allegation contained in paragraphs 41 and 42 of the Plaintiffs'

Complaint, the County Defendants admit that the County installed two cattleguards along Quay

Road 69.  The County Defendants deny the remaining allegations contained in paragraphs 41 and

42 of the Plaintiffs' Complaint.

16. The County Defendants deny the allegations contained in paragraphs 43, 44, 45, 46,

47, 48, 49, 50 and 51 of the Plaintiffs' Complaint.

17. With respect to the allegation contained in paragraph 52 of the Plaintiffs' Complaint,

the County Defendants admit that other cattleguards are installed in the area where the Plaintiffs'

property is located. The County Defendants deny the remaining allegations contained in

paragraph 52 of the Plaintiff's Complaint.

18. The County Defendants deny the allegations contained in paragraphs 53, 54, 55, 56,

57, 58 and 59 of the Plaintiffs' Complaint.

<u>Answer to County Government Defendants' Refusal to Remove the Cattleguards</u>

19. The County Defendants deny the allegations contained in paragraphs 60, 61, 62, 63

and 64 of the Plaintiffs' Complaint.

20. With respect to the allegation contained in paragraph 65 of the Plaintiffs' Complaint,

the County Defendants admit that all cattleguards have been placed within the County for the

purpose of roadway safety. The County Defendants deny all other allegations contained in

paragraph 65 of the Plaintiffs' Complaint.

21. The County Defendants deny the allegations contained in paragraphs 66, 67, 68 and

69 of the Plaintiffs' Complaint.

22. The County Defendants admit the allegations contained in paragraph 70 of the Plaintiff's Complaint.

23. The County Defendants deny the allegations contained in paragraphs 71, 72, 73, 74 and 75 of the Plaintiffs' Complaint.

24.  With respect to the allegation contained in paragraph 76 of the Plaintiffs' Complaint, the County Defendants deny that the Plaintiffs' property is inaccessible with farm equipment, and horses and mules due to county-owned cattleguards. The County Defendants deny all other allegations contained in paragraph 76 of the Plaintiffs' Complaint.

25. The County Defendants deny the allegations contained in paragraph 77 of the Plaintiffs' Complaint.

26. With respect to the allegation contained in paragraph 78 of the Plaintiffs' Complaint, the County Defendants deny that they have severely restricted the Plaintiffs' or anyone else's use of their property. The County Defendants deny all other allegations contained in paragraph 78 of the Plaintiffs' Complaint.

27. The County Defendants deny the allegations contained in paragraphs 79 and 80 of the Plaintiffs' Complaint.

Answer to County Government Defendants' Failure to Maintain the Cattleguards

28. The County Defendants deny the allegations contained in paragraphs 81, 82, 83, 84, 85, 86, 87 and 88 of the Plaintiffs' Complaint.

Answer to Inappropriate Conduct by County Government Defendants
in Concert with the Wallins

29. The County Defendants deny the allegations contained in paragraph 89 of the Plaintiffs' Complaint.

30. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraphs 90, 91, 92 and 93 of the Plaintiffs' Complaint, and therefore deny same.

31. The County Defendants deny the allegations contained in paragraph 94 of the Plaintiffs' Complaint.

32. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraph 95 of the Plaintiffs' Complaint, and therefore deny same.

33. The County Defendants admit the allegations contained in paragraph 96 of the Plaintiffs' Complaint.

34. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraph 97 of the Plaintiffs' Complaint, and therefore deny same.

35. The County Defendants deny the allegations contained in paragraph 98 of the Plaintiffs' Complaint.

36. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraph 99 of the Plaintiffs' Complaint, and therefore deny same.

<u>Answer to Arbitrary Width Increase of County Roadway Easements</u>

37. The County Defendants deny the allegations contained in paragraphs 100, 101, 102, 103 and 104 of the Plaintiffs' Complaint.

38. With respect to the allegation contained in paragraph 105 of the Plaintiffs' Complaint, the County Defendants deny that there has been any subsumption of the fence line parcels of the

Property. The County Defendants deny all other allegations contained in paragraph 105 of the Plaintiffs' Complaint.

<u>Answer to Count I: Denial of Right to Due Process of Law</u>
(New Mexico Constitution and New Mexico Civil Rights Act)

39. With respect to the allegations contained in paragraph 106 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 105 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

40. The allegations contained in paragraphs 107, 108, 109 and 110 of the Plaintiffs' Complaint call for legal conclusions to which no response is required. To the extent a response is deemed necessary, the County Defendants deny same.

41. With respect to the allegations contained in paragraph 111 of the Plaintiff's Complaint, the County Defendants state that the placement of a cattleguard on a County roadway does not require the approval of any landowner living near the cattleguard. The County Defendants deny the remaining allegations contained in paragraph 111 of the Plaintiff's Complaint.

42. With respect to the allegation contained in paragraph 112 of the Plaintiffs' Complaint, the County Defendants submit that the placement of the prior seven cattleguards have been litigated by the parties and the Plaintiff has received appropriate due process related to these cattleguards. The County Defendants deny all other allegations contained in paragraph 112 of the Plaintiffs' Complaint.

43. The County Defendants deny the allegations contained in paragraphs 113, 114, 115, 116 and 117 of the Plaintiffs' Complaint.

<u>Answer to Count II: Denial of Right to Equal Protection Under the of Law</u>
(New Mexico Constitution and New Mexico Civil Rights Act)

44. In response to the allegations contained in paragraph 118 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 117 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

45. The allegations contained in paragraphs 119 and 120 of the Plaintiffs' Complaint call for legal conclusions to which no response is required. To the extent a response is deemed necessary, the County Defendants deny same.

46. The County Defendants deny the allegations contained in paragraphs 121, 122, 123, 124, 125 and 126 of the Plaintiffs' Complaint.

<u>Answer to Count III: Denial of Right to Due Process of Law</u>
(United States Constitution and 42 U.S.C. § 1983)

47. In response to the allegations contained in paragraph 127 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 126 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

48. The allegations contained in paragraphs 128, 129 and 130 of the Plaintiffs' Complaint call for legal conclusions to which no response is required. To the extent a response is deemed necessary, the County Defendants deny same.

49. With respect to the allegations contained in paragraph 131 of the Plaintiff's Complaint, the County Defendants state that the placement of a cattleguard on a County roadway does not require the approval of any landowner living near the cattleguard. The County

Defendants deny the remaining allegations contained in paragraph 131 of the Plaintiff's Complaint.

50. With respect to the allegation contained in paragraph 132 of the Plaintiffs' Complaint, the County Defendants submit that cattleguards placed in the vicinity of the Plaintiffs' property has been litigated by the parties and the Plaintiff has received appropriate due process related to these cattleguards. The County Defendants deny all other allegations contained in paragraph 132 of the Plaintiffs' Complaint.

51. The County Defendants deny the allegations contained in paragraphs 133, 134, 135, 136 and 137 of the Plaintiff's Complaint.

Answer to Count IV: Denial of Right to Equal Protection Under the Law
(United States Constitution and 42 U.S.C. § 1983)

52. In response to the allegations contained in paragraph 138 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 137 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

53. The County Defendants deny the allegations contained in paragraphs 139, 140, 141, 142 and 143 of the Plaintiff's Complaint.

Answer to Count V: Denial of Right to Equal Protection Under the Law
(United States Constitution and 42 U.S.C. § 1983)

54. In response to the allegations contained in paragraph 144 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 143 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

55. The County Defendants deny the allegations contained in paragraphs 145 and 146 of the Plaintiff's Complaint.

56. The County Defendants admit the allegations contained in paragraph 147 of the Plaintiff's Complaint.

57. The County Defendants deny the allegations contained in paragraphs 148 and 149 of the Plaintiff's Complaint.

Answer to Count VI: Civil Conspiracy

58. In response to the allegations contained in paragraph 150 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 149 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

59. The County Defendants deny the allegations contained in paragraphs 151, 152 and 153 of the Plaintiff's Complaint.

Answer to Count VII: Private Nuisance

60. In response to the allegations contained in paragraph 154 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 153 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

61. The County Defendants deny the allegations contained in paragraphs 155, 156, 157, 158, 159 and 160 of the Plaintiff's Complaint.

Answer to Count VIII: Abatement of a Public Nuisance

62. In response to the allegations contained in paragraph 161 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to

11

paragraphs 1 through 160 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

63. The County Defendants admit the allegations contained in paragraph 162 of the Plaintiffs' Complaint.

63. With respect to the allegations contained in paragraph 161 of the Plaintiff's Complaint, the County Defendants deny that the Plaintiffs have standing to bring any action on behalf of the State of New Mexico and deny the remaining allegations contained in paragraph 161 of the Plaintiff's Complaint.

64. The County Defendants deny the allegations contained in paragraphs 162, 163, 164, 165 and 166 of the Plaintiff's Complaint.

Answer to Count IX: Negligence
(New Mexico Tort Claims Act)

65. In response to the allegations contained in paragraph 167 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 166 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

66. The allegations contained in paragraphs 168, 169 and 170 of the Plaintiffs' Complaint call for legal conclusions to which no response is required. To the extent a response is deemed necessary, the County Defendants deny same.

67. The County Defendants deny the allegations contained in paragraphs 171, 172, 173, 174, 175 and 176 of the Plaintiff's Complaint.

Answer to Count X: Partial Government Taking and Action for Partial Inverse Condemnation

68. In response to the allegations contained in paragraph 177 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to

paragraphs 1 through 176 of the Plaintiffs' Complaint, as stated above, as though fully set forth herein.

69. The allegations contained in paragraphs 178, 179, 180 and 181 of the Plaintiffs' Complaint call for legal conclusions to which no response is required. To the extent a response is deemed necessary, the County Defendants deny same.

70. The County Defendants deny the allegations contained in paragraphs 182, 183, 184, 185, 186 and 187 of the Plaintiff's Complaint.

## **General Denial**

County Defendants deny each and every allegation of the Plaintiffs' Complaint not specifically admitted above, including but not limited to any substantive allegations or requests for relief in Plaintiff's introductory language and prayers for relief.

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**

Plaintiff has failed to state a claim for which relief can be granted.

### **SECOND AFFIRMATIVE DEFENSE**

Plaintiff's claim for punitive damages are barred by law.

### **THIRD AFFIRMATIVE DEFENSE**

Defendant Moore's actions were objectively reasonable,  done in good faith, and therefore, he is entitled to qualified immunity.

### **FOURTH AFFIRMATIVE DEFENSE**

The Plaintiff's claims are barred by the express terms of the New Mexico Tort Claims Act and case law interpreting the Act.

### FIFTH AFFIRMATIVE DEFENSE

County Defendants did not commit a clearly established constitutional violation.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred by the doctrines of collateral estoppel and res judicata.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or reduced by the doctrine of comparative fault.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's injuries or losses, if any, were proximately caused by the negligence, intentional misconduct or other fault of Plaintiff and/or third person for whom County Defendants is not liable.

### TENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred or reduced by their failure to mitigate their damages.

The Defendant reserves the right to rely upon such other defenses as may become known or available during discovery proceedings in this case and hereby reserves the right to amend his answer to include such defenses.

### JURY DEMAND

County Defendants hereby demands a trial by jury on all claims so triable.

Wherefore, having fully answered the Plaintiffs' Complaint, the Defendant respectfully requests that the Court dismiss the Plaintiffs' Complaint with prejudice, award the County Defendants their costs and attorneys' fees incurred herein, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

*Electronically filed November 4, 2022*
By   */s/ Jonlyn M. Martinez*
    JONLYN M. MARTINEZ
    Attorneys for County Defendants
    P.O. Box 1805
    Albuquerque, NM  87103-1805
    (505) 247-9488

I hereby certify that a copy of the foregoing
was sent CM/ECF to all counsel
of record on November 4, 2022:

      /s/

10TH JUDICIAL DISTRICT
QUAY COUNTY NEW MEXICO
FILED IN MY OFFICE

OCT -9 2018
3:24 PM
MARION PAYTON
DISTRICT COURT CLERK

STATE OF NEW MEXICO
TENTH JUDICIAL DISTRICT COURT
COUNTY OF QUAY

DIEGO ZAMORA as Wrongful Death
Personal Representative of the Estate of
PADYN HUGHES, deceased, and SUSAN
HUGHES and KEVIN HUGHES,
Individually and as parents and next
friend of PAYDN HUGHES,
deceased,

                    Plaintiff,

Vs.                                                  D-1010-CV-2016-00068

BOARD OF COUNTY COMMISIONERS
FOR QUAY COUNTY AND QUAY COUNTY

                    Defendants,

### <u>NOTICE OF FILING AFFIDAVIT</u>

Comes now Dusty Stone, Pro se with material facts important for all Parties and the Court. I

request this Court consider for this case and cause No. D-1010-CV-2016-00041 these facts that

are referenced and made a part of by reference thereto setting out the facts in the following pages

seen below:

1
EXHIBIT A

## BACK GROUND & MATERIAL FACTS IN SUPPORT OF MOTION TO INTERVENE

The information below proves that starting in year 2010 (prior to the 2013 accident at issue) through at least to Nov. of year 2015 Quay County claims to the Court numerous times that Dusty Stone was creating the danger of loose livestock upon the public highways including NM 469, which is alleged to have caused the Nov. 3, 2013 accident at issue in the two Wrongful Death suits listed above. Quay County also testified to one of the paths that Dusty Stone's livestock could easily travel from Stone Ranch property, reaching NM 469. NM 469 is the scene of the accident at issue. Quay County's own claims to the court and sworn testimony shows that the livestock which caused the fatal accident more than likely came from Stone Ranch property.

1.  04/26/2010 Quay County through Sheriff Deputy Ben Gates accused Dusty Stone and Lee Stone of leaving gates open allowing livestock to access the public highways (Incident No. QCSO000891). Made a part of by reference thereto.

2.  06/09/2010 County of Quay/Plaintiff filed D-1010-CV-2010-00060 alleging that Defendants/Stones tied 7 gates into permanently open positions. Quay County Sheriff Deputy Ben Gates, Quay County Road Superintendent Larry Moore, and Quay County Manager Richard Primrose testified during the trial that Stone's positioning of the gates created a danger to the motoring public by allowing loose livestock to move onto the public highways at issue.

The original transcript of the trial in cause D-1010-CV-2010-00060 (CV-1060) held on Nov. 2 & 3, 2015 Trial CD times is referenced below made a part of by reference thereto:

    (1) *Quay County's Attorney Jonlyn M. Martinez (JM) Opening Statement [11/2/15 CD times 9:42:31AM-9:42:40AM]     JM: After the cattle guards were installed the defendants opened the metal gates and left them in an open position, thereby defeating the purpose of the cattle guard.*

    (2) *[11/2/15 CD times  9:43:16AM-9:44:05AM] JM: Obviously leaving the metal gates in an open position allows livestock to wander onto the public roadway and defeats the*

EXHIBIT A

*purpose of the cattle guard. Livestock on the roadway creates a dangerous condition to the motoring public. Quay County is tasked with the job of maintaining county roadways and keeping them safe for the motoring public. **The cattle guards at issue are approximately 3 miles from state highway 469, and 10 miles from I-40, so allowing livestock on the roadway allows them to possibly get on the state highways and creates a danger.** And so installation of the cattle guards and the metal gates were installed to protect the public safety of the motoring public, that's what Quay County is tasked to do. Public safety is an important interest to be protected.*

3. CV-1060 11/2/15 Jonlyn Martinez (**JM**) questioning Quay County Sheriff Deputy Ben Gates (**BG**) testifies for Quay County that <u>the gates are to be toward the cattle guards to prevent livestock from wandering onto the county roadway,</u> and testifies that the way Stones have the gates allows livestock access onto the roadway.

   (3) *[11/2/15 CD times  9:50:13AM-9:50:51AM]* ***JM****: Now Deputy Gates, can you tell me what led you to go out and conduct an investigation with regard to these gates?*
   ***BG****: I was patrolling around in this area and noticed these gates were pulled back into the fence lines, and they were supposed to be back over toward the cattle guards.*
   ***JM****: Ok, how did you know that they were supposed to be next to the cattle guards?*
   ***BG****: That's the way they were put in. The County had put these gates in that way.*
   ***JM****: And do you know what the purpose of the gates were?*
   ***BG****: To prevent livestock from going down these county roads.*

   (4) *[11/2/15 CD times  9:51:39AM-9:51:49AM]* ***JM****: Does the way that this gate has been tied, would it allow livestock of any kind to wander out onto the county roadway?*
   ***BG****: Right. Yes, Ma'am.*

   (5) *[11/2/15 CD times  10:09:33AM-10:09:46AM]*      ***JM****: And at the conclusion of your investigation did you determine that based on the way that the Stone's had modified the gates it was… livestock were able to get around the cattle guards and onto the public roadway?*
   ***BG****: Right.*

4. CV-1060 11/2/15 Jonlyn Martinez (**JM**) questioning Quay County Road Superintendent Larry Moore (**LM**) testifying to the design of the cattle guards and gates keeping livestock off of the roadways, with the five gates open livestock can get on county roads and travel to NM 469. He testifies that Stones have gaps in their fencing and without the cattle guards livestock could get out on the roadway.

(6) *[11/2/15 CD times 10:51:21AM-10:51:54AM]* **JM**: *And tell the court what is the purpose of the design. Is the design supposed to be as it's depicted in exhibit 3A?*
**LM**: *Well the design is to be able to let's say let vehicles pass in and out, we support , put support poles on it to make sure the gate doesn't sag or wouldn't catch on anything. The statutes say that you put the gate, it goes with the cattle guard.*

(7) *[11/2/15 CD times 10:54:46AM-10:54:59AM]* **JM**: *And if cattle gets around the cattle guard and onto the roadway, does that create a dangerous and hazardous condition for the citizens of Quay County?*
**LM**: *Yes.*

(8) *[11/2/15 CD times 11:00:10AM – 11:00:45AM]* **JM**: *Sir, from the location of those cattle guards tell the court the route that livestock could take to get to 469.*
**LM: From any of the 5 with the gates open they can get to QR 70 even off of QR U, get on 70, go down to QR T and then hit 469 going north 3 miles.**

(9) *[11/2/15 CD times 11:39:57AM-11:40:16AM]* **JM**: *And in fact, in the Stone's fencing along these county roads, they have gaps in the fencing on their own roads. Correct?*
**LM**: *Yes.*

(10) **JM**: *So without these cattle guards in place and with those gaps in their fencing, cows could get out on the roadway and without the cattle guards they could just continue to travel along the county roads, correct?*
**LM**: *Yes.*

For additional testimony of Larry Moore *see* Quay County's Motion for Summary Judgment

filed 6/29/2018 *marked as EXHIBIT J, Larry Moore's Deposition taken October 20, 2016* Pg. 8

line 25 & Pg. 9 lines 1-3 in part the question states "I guess what I'm trying to find out is if it

wasn't Gene Cox's cattle, do you know whose it might have been that was on the road at the time

of the accident? Pg. 9 lines 4-6 Larry Moore's answer in part states "If some of the cows get

out" "cows will travel and travel and travel so, like I say, there's no telling." Also *see* in Larry

Moore's Deposition described above Pg. 6 lines 4-15 where Mr. Moore gives testimony that he

knows Mr. Cox and that the County has never had any problems with Mr. Cox having cattle on

the roadways or fences down. *EXHIBIT J, Larry Moore's Deposition taken October 20, 2016* is

made a part of by reference thereto.

5. CV-1060 11/2/15 Dusty Stone **(DS)** questioning Quay County Manager Richard Primrose

**(RP)** where he gives his testimony.

(11)     [11/2/15 CD times 1:29:47PM-1:29:54PM] *DS: Was this lawsuit filed with the intent to protect the travelling public?*
*RP: Yes.*

(12)     [11/2/15 CD times 1:44:29PM-1:45:03PM] *DS: The seven cattle guards in question, you've seen them with your own eyes?*
*RP: Yes*
*DS: Are they positioned in a manner that if a gate is attached no livestock can enter, or cross, or travel down any portion of public road?*
*RP: Yes, prevents livestock off of private...or public roads.*

(13)     [11/2/15 CD times 2:10:47PM-2:11:47PM] *DS: The Plaintiff's complaint under count 2 Injunctive Relief paragraph 13 state "as a result of the conduct of the Defendants the county is suffering and will continue to suffer immediate and irreparable harm and injury which there is no adequate remedy at law. Can you describe to the Court the irreparable harm that the County refers to?*
***RP: The way the gate are now livestock on the county roads can actually go to State roads or any county road they are not restricted from any county roads.***

For additional testimony concerning Dusty Stone's livestock  *see in this cause* Quay County's

Motion for Summary Judgment filed 6/29/2018  *marked as EXHIBIT H, Tonya Cone's*

*Deposition taken October 16, 2015* *Pg. 17 lines 16-19 the question states "So what is the closest*

*neighbor that would have cow?"* Mrs. Cone's answer states *"If you go down a dirt road,*

*probably the Stones, Lee Stone and them."* Lines 20-21 question stating *"Well, I'm talking about*

*near 469?"* Mrs. Cone's answer states *"Well – but I mean cattle travel."* *EXHIBIT H, Tonya*

*Cone's Deposition taken October 16, 2015* is made a part of by reference thereto and alerted the

parties that Dusty Stone's Cow at issue more than likely traveled from Stone Ranch to the

accident scene that day in Nov. of 2013. Compare that with Larry Moore's testimony about cows

traveling in Quay County's EXHIBIT J referenced above along with Larry Moore's Testimony

of how Stone's cows get onto public highways including NM 469 in Cause D-1010-CV-2010-

00060 on *[11/2/15 CD times* 11:00:10AM – 11:00:45AM] described above in ¶ (8) setting out

the similarities and Quay County's knowledge in how Dusty Stone's cows can travel to the accident scene.

**WHEREFORE,** the preponderance of evidence show that the Cow that was involved in causing the fatal accident at issue was more than likely Dusty's cow and therefore Dusty Stone should be joined as a Defendant in the cases in the light most favorable to achieve justice. These facts are being submitted to insure that if there is a review in the future due to additional accidents or deaths involving loose livestock on these public highways there is a full and complete record in regards to the issues.

Respectfully Submitted

Dusty Stone
2075 Quay Rd. 69
San Jon, NM 88434
575-403-6970

## **AFFIDAVIT**

The foregoing document was subscribed and sworn to under the penalty of perjury to the best of Dusty Stone's knowledge to be true and correct before me this _8th_ day of _October_, 2018.

Notary Public

My commission expires: _August 29, 2021_

OFFICIAL SEAL
CHANTYL R. LUJAN
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 8-29-21

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was mailed USPS on __9th__ day of October, 2018 to the address seen below:

David M. Houliston
500 Tijeras NW
Albuquerque, NM 87102
dmhouliston@gmail.com

Daymon B. Ely
1228 Central Ave. SW
Albuquerque, NM 87102
daymon@daymonely.com

Dean Border, Esq.
12300 Menaul Blvd. NE
Albuquerque, NM 87112
dean@borderlawoffice.com

Desiree D. Gurule
333 Rio Rancho Blvd. NE Suite 102
Rio Rancho, NM 87124
desiree@brownlawnm.com

Honorable Judge Albert J. Mitchell Jr.
P.O. Box 1067
Tucumcari, NM 88401