**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO ex rel. BUCKY
STONE; STATE OF NEW MEXICO ex
rel. DUSTY STONE; BUCKY STONE,
individually and DUSTY STONE,
individually and d/b/a STONE RANCH,

   Plaintiff,

              Case No. 1:22-CV-00805-MV-JMR

  v.

THE BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF QUAY; LARRY
MOORE, in his official capacity as Quay
County road superintendent;
EVELYN WALLIN; and SHELLEY WALLIN

   Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on: (1) the Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion for More Definite Statement filed on October 31, 2022, by Evelyn Wallin ("Evelyn") and her son Larry Wallin ("Larry") ("Wallins' Motion to Dismiss") [Doc. 6]; (2) the Motion for Leave to File a Surreply filed on December 13, 2022, by Bucky and Dusty Stone with respect to the Wallins' Motion to Dismiss ("Plaintiffs' Motion for Leave to File Surreply") [Doc. 31]; and (3) the Motion to Dismiss for Failure to State a Claim filed on June 12, 2024, by the Board of County Commissioners for the County of Quay and Larry Moore in his official capacity as Quay County road superintendent ("County Defendants' Motion to Dismiss") [Doc. 50].[1] The Court, having considered the motions, briefs, and relevant law, and being

---

[1] Larry Wallin died on or around July 6, 2024, and on April 29, 2025, this Court granted Evelyn Wallin's Motion to Substitute Party, thereby replacing him with his surviving wife, Shelley Wallin, as a co-defendant. Doc. 68; Doc. 73.

1

otherwise fully informed, finds that Plaintiffs' Motion for Leave to File Surreply is well-taken and will be granted, while the Wallins' Motion to Dismiss and the County Defendants' Motion to Dismiss are well-taken in part and will be granted in part and denied in part.

## BACKGROUND

The relevant facts as alleged in the Complaint, taken as true, are as follows. *See generally* Doc. 1-2 ¶¶ 14-105. Plaintiffs Bucky and Dusty Stone ("Plaintiffs") are brothers who reside and earn their living on a rural 722-acre property in Quay County, New Mexico (the "Property"). *See generally* Doc. 1-2. Bucky Stone ("Bucky") owns the Property, but leases it to Dusty Stone ("Dusty"). *Id.* at ¶ 14.

Plaintiffs use or plan to use the Property for hunting, farming, and equine activities. Bucky uses the Property to farm crops such as hay and grain and to operate a hunting business, while Dusty uses the Property to run an equine business involving the breeding, raising, training, and selling of mules and horses. *Id.* at ¶¶ 20-22, 29-34. Plaintiffs' "business and personal use of their Property requires them to transport mules, horses, common farm equipment, large wagons and carts and farm products to, from and around their Property." *Id.* at ¶ 36.

During the approximate date range of October 31, 2019, to November 7, 2019, the Board of County Commissioners for the County of Quay and Larry Moore in his official capacity as Quay County Road Superintendent (the "County Defendants") had a cattleguard installed across Quay Road near where it intersects Quay Road 69 ("Cattleguard 1"), which is east of the Property and adjacent to the land owned by Evelyn. *Id.* at ¶ 41. During the installation, the road embankments were steepened and barbed wire was put up from the edges of the cattleguard to the adjoining fencing around the Property and around Evelyn's land. *Id.* at ¶ 41.

---

Evelyn, however, was the sole owner and resident of the family's property adjacent to the Stones' Property. Doc. 21 at 2, n.1. Larry had no ownership interest and resided in Logan, New Mexico. *Id.*

Two summers later, "on or around June 23, 2021," the County Defendants hired a contractor, Magnum Welding & Construction, to install a second cattleguard ("Cattleguard 2"), this time across Quay Road 69 where it runs through the southern portion of the Property. *Id.* at ¶ 42; *id.* at 31 (road and property map attached to the Complaint as part of Exhibit A); *id.* at 32-33 (installation invoices included within Exhibit A of the Complaint).

Prior to the additions of Cattleguards 1 and 2, there were seven cattleguards maintained by Quay County on the county roads surrounding the Property: four along Quay Road 70, which forms the northern border of and then transects the northern portion of the Property; two along Quay Road U, which forms the western border of and then transects the western portion of the Property; and one at the corner of Quay Road U and Quay Road 69, along the western boundary of the Property. *Id.* at 31. These are very rural county roads, but New Mexico Highway 469 is only three miles away and Interstate 40 is only ten miles away. Doc. 10 at 18.

Plaintiffs allege that the installation of the two new cattleguards between 2019 and 2021 harmed them in the following ways. First, they prevented Plaintiffs from "reasonably traveling on these blocked sections of Quay Road T and Quay Road 69 with farm equipment, farm products, horses, mules, large wagons and carts to serve their current and desired purposes of their Property." Doc. 1-2 at ¶ 43. Plaintiffs claim that the cattleguards create choke points too narrow for their farm equipment and farm products, and that going around the cattleguards is no longer an option because the embankments have been steepened. *Id.* at ¶¶ 44-45. Second, the cattleguards remove Plaintiffs' ability to travel on those county roads "with horses and mules because the [new cattleguards] deter the animals and will damage the animals' legs." *Id.* at ¶ 46. As with farm equipment, Plaintiffs allege that the steepened embankments prevent them from taking horses and mules around the new cattleguards. *Id.* at ¶ 47. They also claim that they cannot take horses or mules through the gates

on either side of each new cattleguard because the gates need to be opened and closed manually. *Id.* at ¶ 48. According to Plaintiffs, the cattleguards "severely restrict and prevent Plaintiffs from their reasonable use of Quay Road T and Quay Road 69," and since Quay Road 69 goes through the Property, effectively block them from transporting various farm-related items "to/from and around their Property." *Id.* at ¶ 49. Consequently, the cattleguards "severely restrict and prevent Plaintiffs from their use and enjoyment of their Property," a result of which the County Defendants were aware when installing them. *Id.* at ¶¶ 50-51.

Cattleguards 1 and 2 "choked off the last remaining sections of the Roadways abutting and running through Plaintiffs' Property." *Id.* at ¶ 53. Specifically, the two new cattleguards were placed along the only remaining available routes for Plaintiffs to take farm equipment and horses from their Property to other locations, after all other routes were encumbered by the seven preexisting cattleguards. The nine cattleguards installed by the County Defendants over the years are all concentrated within a one-square-mile area "around and through Plaintiffs' Property." *Id.* at ¶ 55. Collectively, those nine cattleguards "severely restrict and prevent Plaintiffs" from reasonably using those county roads, "using and enjoying their Property," and "growing and developing their businesses." *Id.* at ¶¶ 56-58. Plaintiffs claim lost business because of the way their Property has become inaccessible, or "barricaded," for certain transportation needs. *Id.* at ¶¶ 59, 66.

Plaintiffs further complain that their efforts from November 2021 through April 2022 to alert the County Defendants about the harm that the cattleguards inflicted did not lead to their removal. *Id.* at ¶¶ 60-88. Plaintiffs advised the County Defendants that the cattleguards were unnecessary, because the Property is "completely fenced-in to control livestock and discourage trespass." *Id.* at ¶¶ 60, 63. The County Defendants, however, refused to remove the cattleguards,

4

and Plaintiffs allege, albeit without any specific factual basis, that the County Defendants plan to install additional cattleguards in the future. *Id.* at ¶¶ 65-68.

At one point, Dusty attempted to modify one of the nine cattleguards. *Id.* at ¶ 69. After being sued by Quay County, he recognizes that Plaintiffs are "unable to remove or modify" any of the public cattleguards. *Id.* at ¶¶ 69-70.[2] According to Plaintiffs, the County Defendants have granted other property owners' requests for public cattleguards to be removed or modified, including one nearby property owner whose single request for an unspecified modification to Cattleguard 1 was granted, even while Plaintiffs' repeated requests were denied. *Id.* at ¶ 73. Plaintiffs also broadly allege that no other private property owner in Quay County has been adversely affected in the same way, and that no other property is similarly inaccessible to farm equipment or horses. *Id.* at ¶¶ 74-80.

Beyond installation, Plaintiffs complain that the County Defendants have failed to keep the nine cattleguards in good repair, and that their poor condition "presents a danger to any member of the public that attempts to use" those roads and instead pushes road users to "encroach[] on and damage[e] Plaintiffs' Property." *Id.* at ¶¶ 85-87. According to Plaintiffs, none of the cattleguards meet state inspection standards, and the "poor condition" includes "vegetation and sand in the metal grates, loose posts and eroded wooden footing." *Id.* at ¶¶ 82-83. While Plaintiffs allege that the County Defendants knew about these hazards but ignored them, they do not plead facts that, if proven, would demonstrate that knowledge. *Id.* at ¶ 88.

---

[2] The Court believes that this is a reference to the state court decision that Evelyn attached to her individual Reply in support of the Wallins' Motion to Dismiss ("Reebs Decision"). *County of Quay v. Stone*, No. D-1010-CV-201000060 (N.M. Dist. Ct. 10th Jud. Dist. Nov. 17, 2015), *filed as* Doc. 21-1 at 7-13 (hereinafter citations will be made to the pagination in its attachment version, Doc. 21-1). The Court takes judicial notice of the Reebs Decision since it is a matter of public record. *See, e.g.*, *Moore v. Tulsa*, 55 F.Supp.3d 1337, 1341-42 (N.D. Okla. 2014) (surveying authority and rationale for permitting judicial notice of public records at the motion to dismiss stage of a case without converting the motion into a motion for summary judgment).

Plaintiffs allege that their neighbors, the Wallins, have worked hand in glove with the County Defendants to create this trouble.[3] *See generally id.* at ¶¶ 89-99. "Evelyn Wallin and her family" attempted to purchase the Property from the Stone family in the past, and then later attempted to purchase it during a foreclosure action, but were unsuccessful both times. *Id.* at ¶ 91. Based on this history of attempted dispossession, Plaintiffs believe that the County Defendants and the Wallins are "working together to limit or destroy Plaintiffs' development of Plaintiffs' Property and to encourage or force Bucky to sell the Property." *Id.* at ¶ 94. Plaintiffs note that Evelyn requested that the County Defendants install one of the two new cattleguards (seemingly Cattleguard 2) one day after her request to purchase the Property through foreclosure failed in court. *Id.* at ¶ 97. In response to Plaintiffs' IPRA request for records of communication between the Wallins and Quay County, the County Clerk sent a letter dated October 13, 2021, noting that there were no written communications between the County Defendants and "the client requesting installation," ostensibly Evelyn, because those were all "handled [orally]." *Id.* at 32-33. The County Clerk's letter also stated that installation of this new cattleguard was approved by both Mr. Moore and the Quay County Manager. *Id.* at 32.

Plaintiffs attach to the Complaint a copy of an invoice from Magnum Welding & Construction to Mr. Moore dated April 25, 2021, billing Quay County $3,896.20 to install one cattleguard (seemingly Cattleguard 2). Mr. Moore made two handwritten notes on the invoice. *Id.* First, Mr. Moore wrote that the cattleguard was being installed on Quay Road 69 "to keep Stone's livestock from getting to I-40 [and] State Hwy 469." *Id.* Plaintiffs claim that it is false that their livestock ever "appeared" on those highways. *Id.* at ¶ 99. Second, Mr. Moore wrote, "need to bill

---

[3] Notably, Plaintiffs do not attribute to Larry any conduct during the allegedly conspiratorial intermingling between Evelyn and the County Defendants.

6

Mrs. Wallin," which Plaintiffs contend is evidence that the County Defendants collected or intended to collect payment from Evelyn, as the "client requesting installation," for installation of this public cattleguard. *Id.* at 33; *id.* at ¶ 98.

Finally, Plaintiffs allege that, on or around January 2022, the County Defendants began asserting that Quay County's rights-of-way for its county roads had increased to 60 feet in width. *Id.* at ¶¶ 100-05. According to Plaintiffs, the County Defendants' enlarged right-of-way subsumes portions of the Property fence line for public use – a use to which they did not consent and for which they were not compensated. *Id.* at ¶¶ 103-05. Plaintiffs assert that the rights-of-way in other places, including those located on the roads abutting the Wallins' land, are not held to the same newly enlarged width requirement by the County Defendants. *Id.* at ¶¶ 101-02.

Based on these facts, on October 6, 2022, Plaintiffs filed a Verified Complaint for Declaratory Relief, Injunctive Relief, Just Compensation and Damages (the "Complaint") in New Mexico's Tenth Judicial District Court. *Id.* Plaintiffs seek various forms of declaratory and injunctive relief, in addition to actual, compensatory, and punitive damages, just compensation, and fees and costs, for the alleged conspiracy among the Wallins and the County Defendants to deprive Plaintiffs of their right to use and enjoy their property, in violation of both state and federal law, through the installation of Cattleguards 1 and 2 on county roads running along and through the Property, as well as the failure to remove these two cattleguards or any of the seven cattleguards that the County Defendants previously installed. *Id.* The County Defendants timely removed the case to federal court on October 27, 2022. Doc. 1. Thereafter, the Wallins' Motion to Dismiss, the County Defendants' Motion to Dismiss, and Plaintiffs' Motion for Leave to File Surreply were filed. Those Motions are now before the Court.

**DISCUSSION**

I.   <u>**Motion for Leave to File a Surreply**</u>

District of New Mexico Local Rule 7.4(b) requires that a party wishing to file a surreply seek leave of the court. D.N.M.LR-Civ. 7.4(b). In the Tenth Circuit, "[g]enerally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). "If the district court does not rely on the new material in reaching its decision, however, it does not abuse its discretion by precluding a surreply." *Id.* (internal citations omitted). For purposes of determining whether to allow the filing of a surreply, the term "new material" "includes both new evidence and new legal arguments." *Id.* (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003)).

Here, after Plaintiffs filed their response to the Wallins' Moton to Dismiss, Evelyn and Larry each filed an individual reply. Docs. 21 ("Evelyn's Reply"); Doc. 23 ("Larry's Reply"). In Evelyn's Reply, she argues, for the first time, that the Reebs Decision, which she attaches as an exhibit, bars several arguments raised by Plaintiffs under the doctrine of issue preclusion. Doc. 21 at 5. Contending that Evelyn's Reply raised new legal arguments, Plaintiffs filed their Motion for Leave to File Surreply, Doc. 31, attaching their proposed surreply thereto. Doc. 31-1.

The Court agrees that Evelyn raised new material, namely, the legal argument of issue preclusion, for the first time in her Reply, as this argument did not appear in the Wallins' Motion to Dismiss. *Compare* Doc. 21 at 6, 9-10 *with* Doc. 6. Under *Green*, Plaintiffs "should be given an opportunity to respond to [this] "new material raised for the first time in [Evelyn's] reply." 420 F.3d at 1196. The Court thus grants Plaintiffs' Motion for Leave to File Surreply. The proposed

Surreply shall be filed on the docket as a separate entry, and in deciding the Wallins' Motion to Dismiss, the Court will consider the arguments in Plaintiffs' Surreply.

## II.     <u>Motions to Dismiss</u>

*Legal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of all or part of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A claim has not been stated for purposes of Rule 8 of the Federal Rules of Civil Procedure, and thus succumbs to a motion to dismiss under Rule 12(b)(6), when the pleading fails to go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts are not "bound by conclusory allegations, unwarranted inferences, or legal conclusions." *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Yet, plausibility does not require that it be more probable than not that relief would be granted. *Iqbal*, 556 U.S. at 678. Instead, to be plausible a claim must "plead[] factual conduct that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a motion to dismiss, courts consider only the contents of the complaint, materials attached to or incorporated by reference in the complaint, documents referred to and central to the complaint when authenticity is undisputed, and anything of which a court may take judicial notice. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). Parties cannot informally amend through or seek to clarify in a response brief what is missing from

9

materials that the Court is permitted to consider at this stage. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1271, 1283 (10th Cir. 2010).

*Instant Case*

In the County Defendants' Motion to Dismiss, the County Defendants seek Rule 12(b)(6) dismissal of all ten claims in the Complaint, each of which is asserted against them: a due process claim under the New Mexico Constitution (Count I); an equal protection claim under the New Mexico Constitution (Count II); a due process claim under the Fourteenth Amendment of the United States Constitution (Count III); an equal protection claim under the Fourteenth Amendment of the United States Constitution (Count IV); a federal civil rights conspiracy claim (Count V); a state law conspiracy claim (Count VI); a state law private nuisance claim (Count VII); a state statutory claim for abatement of a public nuisance (Count VIII); a state law negligence claim (Count IX); and a state statutory inverse condemnation claim (Count X). In the Wallins' Motion to Dismiss, Evelyn and Larry, who has been substituted by Shelley, seek Rule 12(b)(6) dismissal of the three claims brought against them: the federal civil rights conspiracy claim set forth in Count V; the state law conspiracy claim set forth in Count VI; and the state law private nuisance claim set forth in Count VII. Doc. 6. In the alternative, the Wallins request a more definite statement from Plaintiffs pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. *Id.*

Three of Plaintiffs' claims arise under federal law (Counts III, IV, and V), and the remainder arise under state law. Pursuant to 28 U.S.C. § 1331, the Court exercises federal question jurisdiction over the three federal claims and, pursuant to 28 U.S.C. § 1367, exercises supplemental jurisdiction over the seven state claims, which arise out of the same factual circumstances as do the federal claims. As to the state claims, the Court applies federal procedural law and state substantive law. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726

10

(1966) (applying *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), to state claims heard pursuant to supplemental jurisdiction). A federal court hearing state claims is charged with "ascertain[ing] and apply[ing] the state law." *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944). Decisions from the state's highest court are the gold standard, but, in the absence of such authority, the federal court should "attempt to predict what the state's highest court would do." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). This Court thus will consider each of Plaintiffs' state claims under applicable New Mexico law.

## A. State Constitutional Due Process and Equal Protection Claims

In Count I, Plaintiffs allege that the County Defendants violated their due process rights under the New Mexico Constitution by (1) installing Cattleguard 1 and Cattleguard 2 on county roads adjacent to the Property, and (2) failing to remove any of the nine cattleguards that cross the roadways abutting and running through the Property despite Plaintiffs' efforts from November 2021 through April 2022 to alert the County Defendants about the harm that those cattleguards inflicted. *Id.* at ¶¶ 60-88. Plaintiffs characterize these actions as "arbitrary and capricious" and "intended to knowingly and willfully deprive Plaintiffs' use of their constitutionally protected property and liberty rights." Doc. 1-2 ¶¶ 106-17; *id.* at ¶ 114. In Count II, Plaintiffs allege that, through the same conduct, the County Defendants violated their equal protection rights under the New Mexico Constitution, as their actions were "objectively unreasonable, illogical and intended to target Plaintiffs" and "[t]here is no conceivable basis [for those actions] other than a wholly illegitimate motive." *Id.* at ¶¶ 118-26; 123-24. Plaintiffs seek vindication of their state constitutional due process and equal protection rights via the New Mexico Civil Rights Act ("NMCRA"), which provides the relevant "mechanism for bringing claims for violations of the

11

rights secured by the New Mexico Constitution." *Lowrey v. Portis*, No. 23-CV-372, 2024 WL 3875799, at *4 (D.N.M. Aug. 20, 2024) (citing N.M. Stat. Ann. § 41-4-1).[4]

In arguing for dismissal of Plaintiffs' state constitutional claims, the County Defendants cite to N.M. Stat. Ann. § 4-4A-12, which provides that "claims arising solely from acts or omissions that occurred prior to July 1, 2021 [(the effective date of the NMCRA]) may not be brought pursuant to the New Mexico Civil Rights Act." Noting that Plaintiffs allege that the last of the two new cattleguards was installed on June 23, 2021 – before the July 1, 2021 effective date set forth in the NMCRA – the County Defendants argue that Plaintiffs' state constitutional claims cannot be enforced under the NMCRA. Doc. 50 at 4.

Plaintiffs ask the Court to leniently construe the timeframe alleged in the Complaint such that the words, "on approximately June 23, 2021," be understood to potentially encapsulate an allegation that Cattleguard 2 was installed on or after July 1, 2021. Doc. 55 at 3-4. As the County Defendants aptly note, however, Cattleguard 2 was in fact installed on June 23, 2021 – not eight days later. Doc. 61 at 2-3. The complained-of act was discrete and identifiable (the cattleguard is there or it is not), Plaintiffs have not indicated that they believe that the installation occurred on or after July 1, 2021, and the County Defendants assert that it occurred precisely on June 23, 2021. While at this stage the Court must defer to the facts as alleged in the Complaint, the Complaint contains no factual allegations that Cattleguard 2 was installed on or after July 1, 2021. Plaintiffs do not cite, and the Court has not found, any authority that would require the Court to defer to Plaintiffs' temporal allegations in the way that they request. Because, as the County Defendants

---

[4] Specifically, Section 41-41-3(B) of the NMCRA provides that "[a] person who claims to have suffered a deprivation of any rights . . . pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court."

argue, Cattleguard 1 and Cattleguard 2 were installed before the effective date of the NMCRA, the installation of those cattleguards cannot form the basis for Plaintiffs' state constitutional claims.

Plaintiffs, however, also base their state constitutional claims on the County Defendants' failure, between November 2021 and April 2022, to remove any of the nine cattleguards surrounding the Property. This failure thus is alleged to have occurred after the effective date of the NMCRA. Accordingly, to the extent that Plaintiffs claim that, by failing to remove any of the nine cattleguards, the County Defendants violated their due process and equal protection rights, their state constitutional claims do not arise solely out of acts that occurred prior to July 1, 2021, and thus are not subject to dismissal on that basis.

Plaintiffs' state constitutional claims, as alleged in Counts I and II of the Complaint, are actionable solely as they pertain to the County Defendants' alleged failure to remove the nine cattleguards surrounding the Property. To the extent that Plaintiffs base their state constitutional claims on the installation of Cattleguard 1 and Cattleguard 2, those claims are dismissed. Plaintiffs' state constitutional claims thus remain viable only to the extent described herein.

**B. Federal Constitutional Claims**

In Counts III, IV, and V, Plaintiffs bring claims against the County Defendants pursuant to § 1983 for due process violations, equal protection violations, and civil conspiracy, respectively. Plaintiffs also include the Wallins as defendants on their civil conspiracy claim (Count V). As an initial matter, in moving to dismiss these federal claims as against him, Mr. Moore argues that he is entitled to qualified immunity. Doc. 50 at 9-10. In this action, Plaintiffs have sued Mr. Moore in his official capacity only, not in his individual capacity. *See* Doc. 1-2. "In official capacity suits, the real party in interest is the government entity, not the public official himself." *Swartz v. Beach*, 229 F. Supp. 2d 1239, 1266 (D. Wyo. 2002) (citing *Hafer v. Melo,* 502 U.S. 21, 25 (1991)). The

defense of "[q]ualified immunity, however, is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities." *Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1263 (10th Cir. 2009). Accordingly, Mr. Moore is not entitled to assert qualified immunity as a defense to Plaintiffs' federal claims. The Court thus will not dismiss Plaintiffs' federal claims as asserted against Mr. Moore based on qualified immunity, but instead will consider the sufficiency of Plaintiffs' allegations as alleged against all Defendants.

1. Fourteenth Amendment Due Process Claim

In Count III, Plaintiffs claim that they were deprived of the use of their own property, resulting in the deprivation of their "constitutionally protected property and liberty rights," Doc. 1-2 ¶ 133, in violation of the Due Process Clause of the Fourteenth Amendment, which prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause includes both procedural and substantive due process: "procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council,* 226 F.3d 1207, 1210 (10th Cir. 2000). Plaintiffs claim violations of both procedural and substantive due process; the Court addresses each claim in turn.

*Procedural Due Process*

Plaintiffs allege that the County Defendants' installment of the new cattleguards and failure to remove any of the nine cattleguards infringed their right to "ingress and egress," which in turn led to the infringement of their rights to use their property "for a particular purpose," namely, to

14

engage in their chosen field/business, without "notice, hearing, or any other fair or impartial process." Doc. 1-2 ¶¶ 129-321. The Court "engage[s] in a two-step inquiry" to determine whether there has been a procedural due process violation: first, the Court asks whether "the individual possess[ed] a protected property interest to which due process protection was applicable"; and second, the Court asks whether "the individual [was] afforded an appropriate level of process." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006).

As to the first step, the Supreme Court has explained, that, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The "purpose of the ancient institution of property" is "to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Id.* Property interests are not "created by the Constitution," but instead "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Accordingly, "constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials. *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1972)). The Court looks to New Mexico law to determine whether Plaintiffs have properly alleged the deprivation of a legally cognizable property right.

Under New Mexico law, landowners have a right to reasonable but not unlimited access to their property. *See State ex rel. State Highway Comm'n v. Danfelser*, 384 P.2d 241, 246 (N.M. 1963) ("[T]he right of access, if it is to be termed a right, as such, is merely a right to reasonable, but not unlimited, access to and from the land."). While the Court has not found any cases directly

15

addressing the scope of "reasonable access" in the context of protecting certain *types* of access for purposes of determining a protected property interest, an analogy can be drawn to the law for implied easements of necessity. In that context, there is a presumption of access reasonably necessary for the beneficial utilization of the land. *See Los Vigiles Land Grant v. Rebar Haygood Ranch, LLC*, 317 P.3d 842, 850 (N.M. Ct. App. 2013) (quoting *Herrera v. Roman Catholic Church*, 819 P.2d 264, 267 (N.M. Ct. App. 1991) ("Necessity for [an] easement arises from a presumption that, when a grantor conveys property, . . . [they are] presumed to have intended to have reserved . . . a means of access to the property in question, so that the land may be beneficially utilized.")). In *Los Vigiles Land Grant*, the court rejected the defendant's argument that an easement should be found only where the property at issue was "landlocked," adopting instead a practical approach evaluating the effect that the absence of an easement would have on the owner's access to the property. The court stated, "[u]nder New Mexico case law, we are not to interpret the word "landlocked" so literally and absolutely as to mean that there exists no possibility of gaining access. No New Mexico case requires such a literal, absolute rule. To the contrary, the controlling view is that of "reasonable necessity." 317 P.3d at 850. Based on this interpretation of New Mexico law, this Court concludes that the New Mexico courts would find a protected property interest in the access to one's property that is reasonably necessary to effectuate the beneficial use of that property.

The Court finds that Plaintiffs have adequately alleged such a protected property interest. Specifically, the Complaint states that, by installing and failing to remove the cattleguards at issue, County Defendants knowingly prevented them from "reasonably traveling on the[] blocked sections of Quay Road T and Quay Road 69 with farm equipment, farm products, horses, mules, large wagons and carts," all of which are necessary "to serve their current and desired purposes of

their Property." Doc. 1-2 at ¶¶ 43, 51. These allegations, if proven, would establish that the County Defendants deprived Plaintiffs of the access to their Property that was reasonably necessary for the beneficial utilization of that Property, including their farming and hunting businesses. *See Conn v. Gabbert,* 526 U.S. 286, 291–92 (1999) ("[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation."); *State Racing Comm'n v. McManus*, 476 P.3d 767, 771 (N.M. 1970) (holding that a horse owner "has a right to engage in [their] chosen profession and is entitled to due process of law if [they are] to be lawfully denied an opportunity to do so").

As to the second step of the procedural due process analysis, "ordinarily one who has a protected property interest is entitled to some sort of hearing before the government acts to impair that interest." *Camuglia*, 448 F.3d at 1220. "[D]ue process is flexible and calls [only] for such procedural protections as the particular situation demands." *Id.* (citation omitted). Accordingly, "where the state must act quickly, a meaningful postdeprivation hearing is adequate." *Id.* (citation omitted).

Here, Plaintiffs have alleged that they were afforded no hearing whatsoever, either before or after the County Defendants acted to infringe on their reasonable access to the Property. Doc. 1-2 ¶¶ 111, 112 ("County Government Defendants did not seek consent from Plaintiffs, nor provide a notice, hearing, or other fair or impartial process for Plaintiffs before installing the Two New Cattleguards" or "refusing to remove all of the Nine Cattleguards."). Although due process is flexible, the allegations, if proven, would establish that Plaintiffs were deprived of a protected property interest without being afforded an appropriate level of process. Accordingly, Plaintiffs' allegations are sufficient to survive both steps of the two-step procedural due process inquiry.

In support of their request for dismissal of Plaintiffs' procedural due process claim, the County Defendants cite to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), for the proposition that "it is [only] when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Doc. 50 at 10-11. The County Defendants further accurately cite *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013), for the proposition that a challenged practice may be deemed an official policy or custom "if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." Doc. 50 at 10. The County Defendants, however, do not go on to apply this law to the facts alleged here. Plaintiffs' allegations specifically posit Mr. Moore, as the "Superintendent of the Quay County Road Maintenance Department" who had "charge of all work of construction and maintenance of county roads and bridges, and the purchasing of equipment, materials and supplies for the same," as responsible at least in part for all of the challenged decisions here. The County Defendants make no argument as to how or why these allegations are not adequate to state that Mr. Moore's decisions represent official policy or custom.

To survive dismissal, Plaintiffs allegations, if proven, must establish that the County's policies or customs "have played a part in alleged violations of federal law." *Hafer*, 502 U.S. at 25. The Court finds that the Complaint meets this standard. The allegations therein, if proven, would establish that Mr. Moore, a municipal policymaker, was pivotal in making the final decisions challenged as constitutional violations here. Accordingly, *Monell* provides no basis for the Court to dismiss Plaintiffs' procedural due process claim.

After citing *Monell*, but failing to apply it to the facts alleged here, the County Defendants go on to assert, with no legal authority or analysis, that "Plaintiffs have no right to due process concerning the location, placement or removal of cattleguards placed on County roads." Doc. 50 at 11. This unsupported argument is insufficient to provide any basis for dismissal. *See* D.N.M.-LR 7.3(a) (requiring a motion to "cite authority in support of the legal positions advanced" therein); *see also Schwartz v. Booker*, No. 09-CV-0915, 2024 WL 3540355, at *11 (D. Colo. July 25, 2024) (denying motion where defendants "failed to meaningfully develop their argument such that the Court c[ould] assess its merits"); *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived cursory argument not meaningfully developed by any analysis or citation). The County Defendants' assertion that Plaintiffs have not alleged a protected property interest is unsupported and, as detailed above, contrary to this Court's reading of applicable relevant authority. Accordingly, the County Defendants have provided no valid basis for dismissal of Plaintiffs' procedural due process claim.

*Substantive Due Process*

"An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause." *Camuglia*, 448 F.3d at 1222. "[T]he arbitrariness must be extreme." *Id.* Accordingly, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* (citation omitted).

Here, Plaintiffs allege that, because their Property "is completely fenced-in to control livestock and discourage trespass, . . . the Nine Cattleguards serve no legitimate or reasonable purpose," and thus, in installing and failing to remove the cattleguards at issue, the County Defendants' actions were "arbitrary and capricious" and "constitute[d] standardless regulation impacting Plaintiffs' use of their own Property." Doc. 1-2 ¶¶ 60-61, 133. Plaintiffs further allege

19

that, because the cattleguards "only exist to severely restrict and prevent Plaintiffs from the[] reasonable use . . . of their Property," they were "intended to knowingly and willfully deprive Plaintiffs of their constitutionally-protected property and liberty rights." Doc. 1-2 ¶¶ 62, 133.

Nowhere in their Motion to Dismiss do the County Defendants address Plaintiffs' substantive due process claim. They fail to argue, with legal support or otherwise, that Plaintiffs' allegations fall short of the standard necessary to state an arbitrary deprivation of a property right. Accordingly, any argument that they may have made as to the insufficiency of the Complaint to state a substantive due process claim is deemed waived. *See* D.N.M.-LR. 7.3. While the standard to establish a substantive due process violation is admittedly high, Plaintiffs' allegations, if proven, would be sufficient to meet it. The Court thus cannot dismiss Plaintiffs' substantive due process claim.

2.      Fourteenth Amendment Equal Protection Claim

Plaintiffs allege that the County Defendants violated their right to equal protection by arbitrarily and capriciously installing the two new cattleguards that form the "blockade" with the intent to target them and with no legitimate motive. Doc. 1-2 at ¶¶ 138-43. According to Plaintiffs, the County Defendants have not inflicted that burden on other similarly situated properties. *Id.* at ¶ 139. "The Equal Protection Clause [can] give[] rise to a cause of action even [where, as here] a plaintiff does not belong to a particular class or group." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1253 (10th Cir. 2016). To adequately state "this class-of-one theory, a plaintiff must allege [] (1) that it has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)). "[T]he paradigmatic class-of-one case arises when a public official inflicts a cost or burden on one person without imposing it on those who are

20

similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive." *Id.* (citation omitted).

The Court finds that Plaintiffs have alleged facts sufficient to satisfy the required elements. Specifically, they allege that they were singled out and that they do not know of any other landowners whose properties have been surrounded by cattleguards in this burdensome fashion. Further, they allege that the County Defendants singled them out for the purpose of assisting the Wallins in acquiring the Property, noting that the Wallins' request to have Cattleguard 2 installed, which the County Defendants granted, occurred only one day after the Wallins failed to acquire the Property through foreclosure. Plaintiffs also allege that there was no rational basis for the difference in treatment between them and their neighbors. Based on these allegations, the Complaint "can be fairly construed as alleging" that the County Defendants intentionally restricted access to the Property in ways different from others similarly situated and that their decision to do so was "irrational and wholly arbitrary." *Village of Willowbrook*, 528 U.S. at 565 (finding plaintiff sufficiently stated equal protection claim where she alleged that the Village "intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners"). The allegations in the Complaint thus "are sufficient to state a claim for relief under traditional equal protection analysis." *Id.*

As they did with regard to Plaintiffs' procedural due process claim, in support of their request for dismissal of Plaintiffs' equal protection claim, the County Defendants cite to *Monell*, but fail to apply it to the relevant factual allegations. Doc. 50 at 10. They make no argument as to how or why Plaintiffs' allegations, which specifically posit Mr. Moore as responsible at least in

part for the differential treatment afforded to them vis-à-vis similarly situated property owners, do not adequately allege that such treatment represents official policy or custom.

The Court finds that Plaintiffs' allegations, if proven, would establish that Mr. Moore, a municipal policymaker, was pivotal in making the final decisions challenged as equal protection violations. Accordingly, Plaintiffs allegations sufficiently state that the County's policies or customs "have played a part in alleged violations of federal law." *Hafer*, 502 U.S. at 25. *Monell* thus provides no basis for the Court to dismiss Plaintiffs' equal protection claim.

As they did with regard to Plaintiffs' procedural due process claim, after citing *Monell*, but failing to apply it to the facts, the County Defendants go on to assert, with no legal authority or analysis, that Plaintiffs have "no right to equal protection concerning the cattleguards on County roads." Doc. 50 at 11. As discussed above, this unsupported argument is insufficient to provide any basis for dismissal. The County Defendants' assertion that Plaintiffs have not alleged an equal protection violation is unsupported and contrary to this Court's reading of applicable relevant authority. Accordingly, the County Defendants have provided no valid basis for dismissal of Plaintiffs' equal protection claim.

### 3. Civil Rights Conspiracy Claim

In Count V, Plaintiffs assert a civil rights conspiracy claim, alleging that the County Defendants and the Wallins conspired together to deprive Plaintiffs of their "constitutionally protected rights" by cooperating "to install and/or fund the installation of the Two New Cattleguards" and by cooperating "to prevent the removal of the Nine Cattleguards." Doc. 1-2 ¶¶ 145-146. "Allegations of conspiracy may . . . form the basis of a § 1983 claim." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "To state a § 1983 conspiracy claim," a plaintiff must "allege specific facts showing an agreement upon a common, unconstitutional

goal, and concerted action taken to advance that goal." *Lowrey v. Collela*, No. 25-CV-2063, 2026 WL 1066723, at *3 (10th Cir. Apr. 20, 2026) (citation omitted). In other words, a plaintiff must plead the elements of a civil conspiracy, namely, "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021). These elements may "be proven with circumstantial evidence because rarely will there be direct evidence of an express agreement among all the conspirators to conspire." *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (citation omitted). In addition to pleading a conspiracy, a plaintiff must also plead "an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'" *Id.* Relevant here, "[c]onspiracy with a state actor can render a private party a state actor under § 1983: "[I]f a private party is a willful participant in joint activity with the State or its agents, then state action is present." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citation omitted).

The Court finds that Plaintiffs have adequately alleged a civil rights conspiracy claim as to Evelyn and the County Defendants, with regard to the deprivation of their constitutionally protected interest in reasonable access to the Property. First, Plaintiffs have adequately pled a conspiracy between Evelyn and the County Defendants. Specifically, Plaintiffs allege that the two new cattleguards were installed at the direction of Mr. Moore and the other County Defendants and at Evelyn's request, and that Evelyn's ultimate goal was to own the Property. Plaintiffs further allege that the shared intent of the County Defendants and Evelyn was to render it so difficult for Plaintiffs to use the Property for their desired purposes that Plaintiffs ultimately would have no choice but to sell the Property. As direct evidence of their allegations, Plaintiffs attach a copy of an invoice from a contractor with handwritten notes by Mr. Moore that reflects the County's intent

to bill Evelyn for the cost of one of the cattleguard installations. Doc. 1-2 at 33. Plaintiffs also attach a letter from the County Clerk admitting that the County Defendants communicated with Evelyn, whom they referred to as "the client," concerning Cattleguard 2, but that communications were "handled [orally]." *Id.* at 32. Moreover, as circumstantial evidence of the alleged conspiracy, Plaintiffs allege that Evelyn asked the County to install Cattleguard 2 only one day after she failed to acquire the Property during foreclosure proceedings, and further allege that County Attorney Warren Frost represented her during this proceeding in April 2021. Doc. 1-2 at ¶¶ 95-97. These allegations, if proven, would establish the required elements of a civil conspiracy claim. Second, for the reasons set forth above, Plaintiffs have adequately pled an actual deprivation of constitutionally protected rights, namely, the deprivation of their due process and equal protection rights under the Fourteenth Amendment.

Plaintiffs' allegations, however, do not equally plead a conspiracy between Larry and the County Defendants. The only relevant allegation relating to Larry is a conclusory allegation that he "cooperated" with Evelyn and the County Defendants. But nowhere in the Complaint is any specific action or omission attributed to him. Accordingly, the allegations, even if proven, would not establish the required elements of a civil conspiracy claim as to Larry.

Although the County Defendants purport to request dismissal of all of Plaintiffs' § 1983 claims, they provide no argument as to why Plaintiffs fail to state a civil rights conspiracy claim as against them. As discussed above, the County Defendants' mere citation to *Monell*, without any application to the facts, and without any argument as to how Plaintiffs' allegations are insufficient, provides no basis for the Court to dismiss Plaintiffs' civil rights conspiracy claim. The Court finds that Plaintiffs' allegations, if proven, would establish that Mr. Moore, a municipal policymaker, was pivotal in making the final decisions on which Plaintiffs' civil rights conspiracy claim is based.

24

Accordingly, neither by citing to *Monell* or otherwise have the County Defendants provided any basis for the Court to dismiss Plaintiffs' civil rights conspiracy claim as against them.

Larry asks the Court to dismiss the civil conspiracy claim as against him for two reasons, namely, because the Complaint pleads insufficiently specific facts and because he is not a state actor. Doc. 6; Doc. 23. As noted above, the Court agrees that the Complaint fails to state a civil rights conspiracy claim as to Larry; accordingly, that claim must be dismissed against him.

Evelyn asks the Court to dismiss the civil conspiracy claim as against her for the same reasons as does Larry, and for the addition reason that, under the doctrine of issue preclusion, the Reebs Decision prevents Plaintiffs from litigating this claim against her. Doc. 21. For the reasons described above, the Court finds that the allegations are sufficient to state a civil rights conspiracy claim as against Evelyn. Further, although she is not a state actor, the well-pled allegations that Evelyn was a "willful participant" in joint activity with the County are sufficient to render her a state actor under § 1983 for purposes of Plaintiffs' civil rights conspiracy claim. Finally, as described below, issue preclusion does not bar Plaintiffs' civil rights conspiracy claim.

A party seeking to invoke issue preclusion must establish four elements: (1) "the issue previously decided is identical with the one presented in the action in question"; (2) "the prior action has been finally adjudicated on the merits"; (3) "the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication"; and (4) "the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). According to Evelyn, the Reebs Decision held that the seven cattleguards that predate Cattleguards 1 and 2 "were installed to protect the safety of the motoring public," and that, allowing this Court "to revisit the same issues and conclude that the same cattleguards resulted in a deprivation of rights secured by the United States

Constitution . . . would ignore the preclusive effect" of the Reebs Decision. Doc. 21 at 7. As Plaintiffs argue, however, the issue raised herein, namely whether Evelyn and the County Defendants conspired to deprive Plaintiffs of their constitutional right to reasonable access to the Property, is not identical to the issue decided in the Reebs Decision, which addressed a conversion claim brought by the County against Dusty and his father Lee Stone for tampering with the subject cattleguards. Doc. 31-1 at 3. The issue decided in the Reebs Decision thus was whether, for the safety of the motoring public, Lee and Dusty Stone should be required "to return the metal gates to the position in which they were installed." Doc. 21-1 ¶ 17. The court determined that this requirement was "reasonable and [d]id not create an undue hardship for the Stones." *Id*. Nothing in the Reebs Decision, decided in 2015, can be interpreted as opining on, much less deciding, whether Evelyn (who was not a party to the earlier litigation nor mentioned in the Reebs Decision) conspired with the County Defendants to deprive Plaintiffs of their constitutional rights during a period that allegedly commenced four years later, in 2019. Indeed, as Plaintiffs note, the conditions giving rise to the instant claim did not exist at the time the Reebs Decision was entered, as Cattleguards 1 and 2 were not installed until 2019 and 2021, respectively, and it was not until installation of those new cattleguards that the sum total effect of all nine cattleguards was to prevent Plaintiffs from reasonably accessing their Property. Accordingly, issue preclusion does not prevent Plaintiffs from pursuing their civil rights conspiracy claim against Evelyn.

## C.  State Common Law Tort Claims

In Counts VI, VII, and IX, Plaintiffs bring state common law tort claims of civil conspiracy, private nuisance, and negligence, respectively. Plaintiffs name the County Defendants as defendants on all three claims and include the Wallins as defendants on their civil conspiracy and private nuisance claims.

26

As to the County Defendants, the Court must look to the New Mexico Tort Claims Act ("TCA") to determine whether they are subject to suit on Plaintiffs' tort claims, as it is "the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the [TCA] and in accordance with the principles established in that act." N.M. Stat. Ann. § 41-4-2(A). "Generally, the [TCA] provides governmental entities and public employees acting in their official capacities with immunity from tort suits unless the Act sets out a specific waiver of that immunity." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 916 P.2d 1313, 1316 (N.M. 1996) (citing N.M. Stat. Ann. § 41-4-4). "The TCA delimits the scope of liability for government entities and their employees by: (1) retaining immunity for torts not waived by the TCA, *see* Section 41–4–2(A) (1976); and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty, *see* § 41–4–4 (1996)." *Celaya v. Hall*, 85 P.3d 239, 242 (N.M. 2004). Thus, for the County Defendants to be liable, "plaintiffs' cause[s] of action must fit within one of the exceptions to the immunity granted to governmental entities and public employees." *Begay v. State*, 723 P.2d 252, 255 (N.M. Ct. App. 1985).

Applicable here, "the TCA provides no waiver of immunity for tort claims sounding in . . . private nuisance or civil conspiracy." *Wiggins v. City of Lovington*, No. 05-CV-375, 2006 WL 8444498, at *6 (D.N.M. Feb. 13, 2006) (citing N.M. Stat. Ann. §§ 41-4-5-41 to 4-12). In other words, private nuisance and civil conspiracy claims "do not fall within a recognized exception to the immunity granted [to the County Defendants] under the TCA." *Id.* (citation omitted). Because the County Defendants thus remain immune from suit on Plaintiffs' private nuisance and civil conspiracy claims, those claims will be dismissed as against them.

27

Plaintiffs' negligence claim, however, *does* fall within one of the exceptions to the immunity granted to the County Defendants. Specifically, the TCA waives immunity for liability for damages resulting from property damage "caused by the negligence of public employees while acting within the scope of their duties during the construction, and in subsequent maintenance, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area." N.M. Stat. § 41-4-11(A). Here, Plaintiffs allege that the County Defendants damaged their property by "permitting the Roadways, including the cattleguards and associated gates and fencing, to fall into disrepair." Doc. 1-2 ¶ 173. As the County Defendants appear to concede, these allegations are sufficient to state the County Defendants' negligence in the maintenance of "any . . . roadway," for purposes of § 4-1-11(A). *See Fireman's Fund Ins. Co. v. Tucker*, 618 P.2d 894, 897 (N.M. Ct. App. 1980) (holding that maintenance of fences alongside a "highway through cattle country in New Mexico" fell within § 41-4-11(A) waiver, even though fencing is not named in the statute, since fencing is an essential aspect of "keeping [the highway] safe for public use").

The County Defendants nonetheless argue for at least partial dismissal of Plaintiffs' negligence claim for untimeliness and lack of adequate notice. First, the County Defendants argue that Plaintiffs' negligence claim, to the extent that it relates to the installation of Cattleguard 1 on November 7, 2019, is barred by the TCA's two-year statute of limitations, as the instant action was not commenced until October 2022. *See* N.M. Stat. Ann. § 41-4-1 (setting limitations period for action under the TCA as two years "after the date of occurrence resulting in loss, injury or death"). The Court agrees. Next, the County Defendants argue that Plaintiffs' negligence claim, to the extent that it relates to the installation of Cattleguard 2 on June 23, 2021, is barred by the TCA's notice requirement, as Plaintiffs did not submit notice of their intent to sue until November 19, 2021, which was more than 90 days later. *See Conklin v. Sierra Vista Hosp. Governing Bd.,* 584

28

P.3d 1016, 1023 (N.M. Ct. App. 2026) (explaining that under § 41-4-16(A), a claimant must provide written notice of the "time, place, and circumstances of the loss or injury" within ninety days"). Again, the Court agrees.

However, Plaintiffs' allegations in support of their negligence claim do not concern the *installation* of Cattleguards 1 and 2, but rather concern the County Defendants' alleged breach of their duties by "permitting the Roadways, including the cattleguards and associated gates and fencing, to fall into disrepair." Doc. 102 ¶ 173. Accordingly, as Plaintiffs argue, they were required to provide notice to the County Defendants within 90 days of their discovery that the cattleguards blockading their property had fallen into disrepair. Doc. 55 at 5. Plaintiffs further argue that because Cattleguard 2 was installed on June 23, 2021, and because it would have taken at least a few months thereafter to fall into disrepair, the point at which they knew or should have known about the harm could not have been at a point early enough after June 23, 2021, that the letter dated November 19, 2021, would fall outside the 90-day notice window. *Id.* The Court agrees, but also agrees with Plaintiffs' implicit concession that their notice was timely only as to any disrepair that befell the last of the cattleguards to have been installed. Cattleguard 1 was installed in the Fall of 2019, and the other seven cattleguards were installed even earlier. Given the physical proximity of these cattleguards to the Property, where Plaintiffs live, and given how quickly Plaintiffs appear to have been able to notice the damage cause by traffic avoiding the unrepaired Cattleguard 2, it is implausible that Plaintiffs did not know and should not have known about the damage resulting from the failure to maintain the first eight cattleguards until sometime on or after August 21, 2021 (90 days prior to the letter). For this reason, the Court finds that timely notice was provided only with respect to the damage caused by public motorists' alleged trespass while bypassing

Cattleguard 2. Accordingly, Plaintiffs' negligence claim will be permitted to proceed only to the extent that it relates to the County Defendants' alleged failure to maintain Cattleguard 2.

As to the Wallins, Plaintiffs' claims for nuisance and civil conspiracy fail for the following reasons. First, the Complaint fails to state a claim of private nuisance as against the Wallins. "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Ortiz v. New Mexico Dep't of Cultural Affs.,* No. 16-CV-1396, 2018 WL 318461, at \*4 (D.N.M. Jan. 5, 2018), *report and recommendation adopted*, No. 16-CV-1396, 2018 WL 691644 (D.N.M. Jan. 31, 2018) (citing *State ex rel. Baxter v. Egolf*, 757 P.2d 371 (N.M. Ct. App. 1988)). "To state a claim for nuisance, a plaintiff must show that the defendant's conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of the land, and the invasion is either: (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." *Id.* (citing *Scott v. Jordan*, 661 P.2d 59 (N.M. Ct. App. 1983)). Here, Plaintiffs conclusorily allege that the Wallins, with the County Defendants, "invaded Plaintiff's private use and enjoyment of Plaintiff's Property by unreasonably causing the Two New Cattleguards to be installed . . . [and] "the Nine Cattleguards to permanently remain." Doc. 1-2 ¶¶ 155-156. But none of the factual allegations in the Complaint support the conclusion that the *Wallins'* conduct was a "legal cause" of any invasion of Plaintiff's Property. Rather, the Complaint alleges that Evelyn "requested" that the County Defendants install Cattleguard 2, after her attempt to purchase the Property failed. This allegation is insufficient to establish, as it must, that the Wallins legally caused an invasion of Plaintiffs' interest in the private use and enjoyment of the Property. Plaintiffs' private nuisance claim thus will be dismissed as against the Wallins.

30

Second, because Plaintiffs' private nuisance claims are not viable against either the County Defendants or the Wallins, Plaintiffs' civil liability claim as alleged against the Wallins necessarily fails. "In order to prevail on a claim for civil conspiracy, Plaintiffs must show (1) that a conspiracy between two or more individuals existed, (2) that specific wrongful acts were carried out by Defendants pursuant to the conspiracy, and (3) that Plaintiffs were damaged as a result of such acts." *Cain v. Champion Window Co. of Albuquerque,* 164 P.3d 90, 98 (N.M. Ct. App. 2007). "A civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators." *Id.* Accordingly, "Plaintiffs cannot recover on a claim for civil conspiracy unless they can recover against at least one of the conspirators for a specific wrongful act beyond the conspiracy itself." *Id.* Here, the Court has found that Plaintiffs' private nuisance claim – the only substantive claim from which their state law conspiracy claim could derive – must be dismissed as against both the County Defendants and the Wallins. Plaintiffs thus cannot recover against any of the conspirators for a specific wrongful act beyond the conspiracy itself. It follows that Plaintiffs' conspiracy claim also must fail. Plaintiffs' civil conspiracy claim thus will be dismissed as against the Wallins.

### D.  State Statutory Claim for Abatement of a Public Nuisance

In Count VIII, Plaintiffs, on behalf of the State of New Mexico, assert against the County Defendants a state statutory claim for abatement of a public nuisance, on the ground that "the Nine Cattleguards on the Roadways are in poor condition, adverse to public safety and welfare, and not duly authorized." Doc. 1-2 ¶ 163. Plaintiffs bring this claim under N.M. Stat. Ann. § 30-8-8, which provides that "a civil action to abate a public nuisance may be brought . . . by any public officer or private citizen . . . against any person, corporation or association of persons who shall create, perform or maintain a public nuisance." For purposes of this claim, a "public nuisance" is defined

as "knowingly creating, performing or maintaining anything affecting any number of citizens without lawful authority which is either injurious to public health, safety, morals or welfare; or interferes with the exercise and enjoyment of public rights, including the right to use public property. N.M. Stat. Ann. § 30-8-1.

As an initial matter, the County Defendants are not, as they contend, entitled to immunity as to this claim. Section 30-8-8 "does not provide for recoverability of damages." *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.,* 857 F. Supp. 838, 851 (D.N.M. 1994). "The civil remedy available to the Plaintiffs under § [30-8-8] is abatement of the nuisance—equitable relief— rather than an award of pecuniary damages." *New Mexico v. Gen. Elec. Co.,* 335 F. Supp. 2d 1185, 1242 (D.N.M. 2004); *see also Schwartzman*, 857 F. Supp. at 851 (explaining that plaintiffs in a § 30-8-8 action "are acting for the citizenry in general, and seek to force those who maintain public nuisances to refrain from further injuring the people"). While § 41-4-17(A) makes clear that the TCA is "the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act" such that "no other claim . . . for *damages*, by reason of the same occurrence, may be brought," that section further clarifies that nothing therein "shall be construed to prohibit any proceedings for mandamus, prohibition, habeas corpus, certiorari, injunction or quo warranto." N.M. Stat. Ann. § 41-4-17(A) (emphasis added). The New Mexico courts have interpreted this language to mean that the TCA "would not bar a claim for injunctive relief." *El Dorado Utils., Inc. v. Eldorado Area Water and Sanitation Dist.*, 109 P.3d 305, 312 (N.M. Ct. App. 2005)). Accordingly, the TCA does not bar Plaintiffs' claim against the County Defendants for abatement of a public nuisance under § 30-8-8, as that claim is one for injunctive, rather than pecuniary, relief.

Nor does the additional statutory provision cited by the County Defendants provide a basis for immunity. Specifically, Section 42-11-1 provides for governmental immunity from "any suit, action, case or legal proceeding involving a claim of title to or interest in real property except as specifically authorized by law." The County Defendants have neither explained nor supported their contention that this provision is applicable here, where the request for abatement of a public nuisance includes no "claim of title to or interest in real property."

Accordingly, the Court must consider whether Plaintiffs adequately state a claim of public nuisance. As noted above, to state a claim of public nuisance, Plaintiffs must *inter alia* allege facts that, if proven, would establish that the County Defendants acted "without lawful authority." Where, as here, a complaint of public nuisance is raised against a "public works project," as opposed to "a private construction project," the presumption is that the project has been "publicly scrutinized and balanced against all interests, public and private, upon which it will have impact," and that, "[a]t the conclusion of this balancing of interests, a determination [has been] made that, despite any adverse impacts, the project serves the public health, welfare, safety, and rights." *State ex rel. Village of Los Ranchos de Albuquerque v. City of Albuquerque*, 889 P.2d 185, 200 (N.M. 1994). Further, the decision of the governmental entity at issue is presumptively valid, and the burden of proving otherwise is on the party challenging the project. *Id.* at 193.

Here, Plaintiffs fail to allege any facts that, if proven, would disprove the presumptive validity of the County Defendants' decisions relating to the nine cattleguards. Indeed, Plaintiffs specifically allege the lawful authority of Mr. Moore, as the Superintendent of the Quay County Road Maintenance Department, to supervise "all work of construction and maintenance of county roads and bridges." Doc. 1-2 ¶ 8. In the face of that allegation and in the absence of any factual allegations relating to the lack of authority by any of the County Defendants to make decisions

regarding the maintenance and non-removal of the cattleguards, the Complaint is insufficient to state a claim that the County Defendants "create[d], perform[ed] or maintain[ed]" a public nuisance. Plaintiffs' claim for abatement of a public nuisance thus must be dismissed for failure to state a claim.

### E. Claim for Partial Government Taking and Action for Partial Inverse Condemnation

In Count X, Plaintiffs assert a state statutory inverse condemnation claim against the County Defendants for taking, without compensation, a portion of the "fence line" of the Property by "expanding the rights-of-way on the Roadways." Doc. 1-2 ¶ 182. The "State Takings Clause" in the New Mexico Constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." N.M. Const. art. II, § 20. "The concept of 'property' that is protected by the State Takings Clause includes all of the interests included in the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." *City of Albuquerque v. SMP Props., LLC*, 433 P.3d 336, 342 (N.M. Ct. App. 2018). The constitutional protection set forth in the State Takings Clause is codified in N.M. Stat. Ann. § 42A-1-29(A), which provides in relevant part that "[a] person authorized to exercise the right of eminent domain who has taken or damaged . . . property for public use without making just compensation or without instituting . . . any proceeding for condemnation is liable to the condemnee . . . for the value [of] the property [when it was] taken or damaged." This statute "gives express recognition to a cause of action for inverse condemnation." *SMP Props.*, 433 P.3d at 344. Accordingly, "[a]n inverse condemnation claim is available to a property owner when private property has been taken or damaged by a public entity for a public use and the public entity has not paid just compensation or brought a formal condemnation proceeding." *Id.* (citing *Moongate Water Co. v. City of Las Cruces*, 329 P.3d 727, 729 (N.M. Ct. App. 2014)). Notably, "not all consequential damages are

34

compensable in an inverse condemnation case." *SMP Props.*, 433 P.3d at 344. Rather, "to be compensable, a taking of or damage to property must invade some substantive or intrinsic aspect of a landowner's right to the use and enjoyment of its property. An incidental economic loss is not sufficient." *Id.*

The County Defendants argue that the Complaint lacks sufficiently well-pled factual allegations to support Plaintiffs' inverse condemnation claim. Doc. 61 at 6. The Court agrees. Although Plaintiffs allege that the County Defendants "took" a portion of the fence line "without making just compensation," they do not equally allege that this taking was made without a proceeding for condemnation. In fact, to the contrary, Plaintiffs specifically allege that the County Defendants "have allegedly condemned the fence line of the Property," and that the fence line parcels "are now purportedly owned by the County [] Defendants for public use." Doc. 1-2 ¶¶ 182, 184. In their Response, Plaintiffs reiterate this point, noting that they have not been compensated "for the condemnation of the fence line property at issue." Doc. 55 at 11. An inverse condemnation claim, however, cannot be stated if there has been a condemnation proceeding, as Plaintiffs appear to allege has happened here.

Further, even if Plaintiffs had adequately alleged the absence of a condemnation proceeding, their allegations would nonetheless be insufficient to establish that the County's taking "invaded some substantive or intrinsic aspect" of their right to the "use and enjoyment" of the Property. Plaintiffs do not allege any facts pertaining to how they used or intended to use the portion of the fence line that was allegedly taken, and how that use or intended use was prevented. While Plaintiffs conclusorily allege that the County Defendants' actions prevent them "from making any alterations or modifications," Doc. 1-2 ¶ 184, they do not state who told them they could not make alterations or modifications, when such a statement was made, or what specific

35

alterations or modifications they wanted to make, but could not. Nor do they allege *any* economic loss from the alleged taking, let alone a loss that is more than "incidental." Plaintiffs' claim for inverse condemnation pursuant to § 42A-1-29(A) thus will be dismissed for failure to state a claim.

## CONCLUSION

Plaintiffs' state constitutional claims, brought pursuant to the NMCRA, remain viable solely as they pertain to the County Defendants' alleged failure to remove the nine cattleguards surrounding the property. Plaintiffs' federal due process and equal protection claims, brought pursuant to § 1983, remain viable. Plaintiffs' civil rights conspiracy claim, brought pursuant to § 1983, remains viable as to the County Defendants and Evelyn, but not as to Larry/Shelley; that claim is dismissed for failure to state a claim as to Larry/Shelley only. The County Defendants are immune from liability as to Plaintiffs' state common law tort claims of civil conspiracy and private nuisance, and those claims are dismissed as against the County Defendants on that basis. The County Defendants are not immune from liability as to Plaintiff's state common law negligence claim; that claim remains viable to the extent that it relates to the County Defendants' alleged failure to maintain Cattleguard 2. Plaintiffs fail to state common law claims of civil conspiracy and private nuisance as against Evelyn or Larry, and those claims will be dismissed as against them on that basis. Plaintiffs fail to state a statutory claim for abatement of a public nuisance, and that claim will be dismissed for failure to state a claim. Plaintiffs fail to state a claim for partial inverse condemnation, and that claim will be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED** as follows:

(1)     The Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion for More Definite Statement filed on October 31, 2022, by Evelyn Wallin and her son Larry Wallin [Doc. 6] is **GRANTED IN PART AND DENIED IN PART**, as follows: Plaintiffs' federal civil rights conspiracy claim, as set forth in Count V, remains viable as to Evelyn Wallin, but is dismissed as to Larry Wallin/Shelley Wallin. Plaintiffs' state law conspiracy claim, as set forth in Count VI, and state law private nuisance claim, as set forth in Count VII, are dismissed as to Evelyn Wallin and Larry Wallin.

(2)     The Motion for Leave to File a Surreply filed on December 13, 2022, by Bucky and Dusty Stone with respect to the Wallins' Motion to Dismiss [Doc. 31] is **GRANTED**, and Plaintiffs shall file the proposed Surreply on the docket as a separate entry.

(3)     The Motion to Dismiss for Failure to State a Claim filed on June 12, 2024, by the Board of County Commissioners for the County of Quay and Larry Moore in his official capacity as Quay County road superintendent [Doc. 50] is **GRANTED IN PART AND DENIED IN PART,** as follows: Plaintiffs' state constitutional due process claim, as set forth in Count I, and state constitutional equal protection claim, as set forth in Count II, remain viable solely as they pertain to the County Defendants' alleged failure to remove the nine cattleguards surrounding the property and are otherwise dismissed; Plaintiffs' federal due process claim, as set forth in Count III, and federal equal protection claim, as set forth in Count IV, remain viable; Plaintiffs' federal conspiracy claim, as set forth in Count V, remains viable; Plaintiffs' state law conspiracy claim, as set forth in Count VI, and Plaintiffs' state law private nuisance claim, as set forth in Count VII, are dismissed for lack of jurisdiction; Plaintiffs' state law negligence claim, as set forth in Count IX, remains viable solely as it pertains to the County Defendants' alleged failure to maintain

Cattleguard 2 and is otherwise dismissed; and Plaintiffs' inverse condemnation claim, as set forth in Count X, is dismissed.

DATED this 2nd day of June 2026.

MARTHA VAZQUEZ
Senior United States District Judge

38